UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

CHRISTINE M. MARCEAU,
individually

               Plaintiff,

    v.

STATE OF IDAHO, DEPARTMENT
OF INSURANCE,


               Defendant.

Case No. 1:09-CV-00514-N-EJL

**MEMORANDUM DECISION AND
ORDER ON MOTION FOR
SUMMARY JUDGMENT AND
MOTION TO STRIKE**

## INTRODUCTION

Pending before the Court in the above-entitled matter is the Defendant's Motion for

Summary Judgment. The parties have filed responsive briefing and the matter is now ripe for

the Court's review. Having fully reviewed the record herein, the Court finds that the facts

and legal arguments are adequately presented in the briefs and record. Accordingly, in the

interest of avoiding further delay, and because the Court conclusively finds that the

decisional process would not be significantly aided by oral argument, this Motion shall be

decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Christine M. Marceau ("Marceau"), began her employment with Defendant, the Idaho Department of Insurance (the "Department") as a Personnel Technician in September of 2007. She was later promoted to the position of Human Resource Specialist ("HR Specialist") in March of 2008. As HR Specialist, it was Marceau's duty to investigate "personnel problems, report[] findings, and mak[e] recommendations to management." (Dkt. No. 22.) Specifically, one of Marceau's responsibilities was to investigate alleged incidents of sexual harassment and report these incidents to management. *Id.*

Marceau testified that, early in her time as HR Specialist, she "was told by various women" that Tom Wilkerson, a Principal Financial Specialist for the Department, would "stare at their buttocks or breasts, stand unusually close to them, and, in general, make them very uncomfortable." (Dkt. No. 22.) Marceau became aware that these types of complaints "regarding Mr. Wilkerson [went] back several years," and preceded Marceau's tenure as a HR Specialist. Marceau reported such incidents to Mr. William Deal ("Deal"), Director of the Department, and Mr. Shad Priest ("Priest"), Deputy Director of the Department. According to Marceau, both Priest and Deal indicated that they "would take care of it." *Id.* Marceau acknowledges that none of these women filed a

"formal complaint." *Id.* In December 2008, Marceau again complained to Deal about Wilkerson's conduct after she "personally witness[ed] Mr. Wilkerson ogling the buttocks of women, staring at their breasts, sticking out his tongue in a sexual manner, and sneaking out of my office after leaving a box of chocolates." *Id.* Marceau testified that "Mr. Deal again assured me he would take care of it." *Id.* Marceau claims that Deal failed to take remedial action. *Id.* In February 2009, Marceau complained to Deputy Attorney General Tom Donovan ("Donovan") that Becky Barton-Wagner ("Barton-Wagner"), the IT Supervisor for the Department, and Wilkerson had arranged a blind date between Mr. Wilkerson and another Department employee, Margene Bendetti ("Bendetti"). Marceau investigated the blind-date arrangement, viewing it as a potential "quid-pro-quo" demand, and reported the blind-date to Priest, who allegedly informed Marceau that she "was not permitted to speak with....Ms. Barton-Wagner." Marceau then proceeded to discuss the blind-date issue with an Employee Relations Specialist with the Department of Human Resources. According to Marceau, Deal informed her that "he did not feel he needed to address the blind date situation further." *Id.* Marceau also testifies that in April of 2009, Wilkerson "stopped in front of my officer door and luridly stuck out his tongue at me and moved it in a sexual manner." She subsequently reported this to Deal, who allegedly told Marceau that "he would speak to Mr. Wilkerson."

The Department contends, however, that it did not condone or tolerate the alleged sexual harassment. Instead, it indicates it appointed an independent investigator, Kathi Brack ("Brack"), to investigate the claims of sexual harassment. (Dkt. No. 19.) On the basis of Brack's investigation, on July 24, 2009, the Department issued a formal written reprimand of Wilkerson. *Id.* The written reprimand acknowledged that "several female employees came forward to complain that you stare at women to the point that they become uncomfortable, (occasionally) look at women's chests, stare at women from the back or follow them as they walk down the halls and you have a tendency to linger around the work spaces of some women." *Id.* The reprimand also acknowledged that "[s]everal years ago, the Department addressed similar complaints with you regarding a complaint by a female coworker who felt you unnecessarily monitored her whereabouts and stared at her." *Id.*

On August 19, 2009, Marceau's employment with the Department was involuntarily terminated. The Department claims Marceau was fired for "reveal[ing] confidential H.R. information to other state employees," falsely accusing a coworker of improperly accessing Marceau's computer, and for involving individuals from outside the Department before any investigation of that claim could take place. (Dkt. No. 19.) Marceau denies she revealed confidential H.R. information to other state employees and claims her accusation that Barton-Wagner improperly accessed her computer was factually accurate. Instead of being terminated for the reasons offered by the Department,

Marceau claims that she was terminated in retaliation for her investigation of complaints of sexual harassment.

Finally, Marceau argues that, during the period from her termination to the present, the Department has failed to comply with the notice requirements of 29 U.S.C. § 1166(a)(4)(A). Specifically, Marceau claims that she has never received the required notice of her right to continue insurance coverage and argues the Department has offered no evidence which suggests the notice was properly sent. However, the Department argues that the notice was sent to Plaintiff's proper mailing address on November 19, 2009. (Dkt. No. 19 Ex. 4.)

## DISCUSSION

On June 30, 2010, Marceau filed an Amended Complaint alleging six different causes of action. In the Amended Complaint, Plaintiff articulates six separate claims against the Department. (Dkt. No. 13.) First, Marceau claims the Department retaliated against her for "complain[ing] about suspected violations of the law....as a public employee" and so "violated her First Amendment rights to speak on matters of public concern." *Id.* Second, Plaintiff argues that such retaliation entitled her to declaratory relief pursuant to 42 U.S.C. § 1983 as well as attorneys fees pursuant to 42 U.S.C. § 1988(b). Third, Plaintiff claims the Department "failed and continues to fail" to notify her of her right to receive COBRA benefits pursuant to 29 U.S.C. § 1166. Fourth, Plaintiff argues the Department violated I.C. § § 12-2101 et seq. because it retaliated against her for

reporting a suspected violation of Idaho law.  Fifth, Marceau claims the Department

violated Title VII of the Civil Rights Act by permitting a sexually hostile working

environment, failing to investigate complaints of gender hostility and otherwise

discriminatory behavior, and by retaliating against her for complaining about

discriminatory conduct following her charge of discrimination. Sixth, Plaintiff alleges

discrimination on the basis of gender in violation of I.C. § § 67-5901. Marceau does not

"contest entry of summary judgment on" on claims 1, 2, 4, and 6. However, she does

contest the entry of summary judgment for claims 3 and 5.

## I. Motion to Strike

The admissibility of evidence supporting or opposing a motion for summary

judgment is a threshold question which must be answered before determining whether a

material issue of fact exists for trial. This is because "[a] trial court can only consider

admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of

America*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed.R.Civ.P. Rule 56(e)). In the

Motion to Strike, the Department challenges the admissibility of certain portions of the

Affidavit of Christine M. Marceau in Response to Defendants' Motion for Summary

Judgment ("Marceau Affidavit") as well as the Affidavit of Mindy Long ("Long

Affidavit") (Dkt. No. 26.). Before evaluating the merits of Motion for Summary

Judgment, this Court will consider each of the Department's evidentiary challenges to the

Marceau and Long affidavits in turn.

## A. Sham Affidavit

The Department first argues that the Court should strike the Long Affidavit because it is a "sham affidavit" which contradicts her earlier deposition testimony. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. International Game Technology*, 577 F.3d 989, 998 (9th Cir. 2009) (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)(emphasis added). However, the "the sham affidavit rule 'should be applied with caution'" because the rule "is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence." *Id.* (citing *Sch. Dis. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993). Further, "[a]ggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys." *Id.*

Consistent with these concerns, the Ninth Circuit has "fashioned two important limitations on a district court's discretion to invoke the sham affidavit rule." First, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit. " *Van Asdale v. International Game Technology*, 577 F.3d 989, 998 (9th Cir. 2009). Second, courts must "make a factual determination that the contradiction was actually a 'sham.'" *Id.* (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 26-67 (9th Cir. 1991).

To satisfy the first prong, the inconsistency in the witness' testimony must be "clear and unambiguous." In the challenged affidavit, Long testified that "[Marceau] had never disclosed confidential information to me." (Dkt. No. 23.) The Department argues that this statement contradicts Long's earlier representations that Marceau had discussed personnel issues with her, that Marceau had no business reason for discussing such matters with her, and that she knew that Marceau "had the duty to keep [such information] confidential." (Dkt. No. 26.) While these statements appear to be conflicting, this Court cannot find, when the context of the statements is considered, that they "clearly and unambiguously" contradict Long's testimony in the affidavit. In her deposition testimony, Long identified only a single specific incident in which Marceau shared personnel-related information. Specifically, she indicated that Marceau had told her that she "was frustrated with Becky Barton-Wagner['s]" handling of a work-related issue. While Long testified that she "probably shouldn't know," about this information, such a statement does not "clearly and unequivocally" contradict her testimony that Marceau "had never disclosed confidential information to me." This is because the qualifying phrase "probably" reveals at least some level of uncertainty as to whether the information Marceau shared was in fact confidential. While it is true that Long further testified that she knew Marceau had the duty to keep information obtained by virtue of her position as an HR Specialist confidential, Long repeatedly indicated she did not recall "the nature of" the conversations in which Marceau allegedly divulged confidential information. Given

that Long repeatedly represented that she could not even remember what kind of

information was being allegedly divulged, it would be difficult for this Court to conclude

that the Long Affidavit "clearly and unequivocally" contradicted Long's prior deposition

testimony.

However, even if the Long Affidavit "clearly and unequivocally" contradicted

Long's prior statements regarding Marceau's alleged disclosure of confidential

information, such a finding is not alone sufficient for this Court to strike the affidavit. In

addition, this Court must "make a specific factual finding" that the "contradiction was

actually a sham." *Van Asdale v. International Game Technology*, 577 F.3d 989, 999 (9th

Cir. 2009). (Finding that the District Court's sole determination that simply finding a

contradiction in an affidavit with prior testimony given during a deposition the affidavit

must be disregarded is insufficient to strike the affidavit.) Importantly, Courts in the

Ninth Circuit are particularly reluctant to find a sham affidavit when the challenged

affidavit is not from a party to the suit. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th

Cir. 2009) (quoting *Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir. 1986)

(emphasis added). ("While a district court may find that a party's contradictory affidavit

constitutes a sham,....we would be unable, absent great trepidation, to affirm a similar

finding with respect to a disinterested witness' contradictory affidavit.") Given this

reluctance, as well as this Court's finding that the Department has not offered sufficient

evidence to demonstrate that any contradictory testimony was in fact offered for the

purpose of avoiding summary judgment, this Court cannot make the required finding that the "contradiction is actually a sham." Therefore, the Department's Motion to Strike the Long Affidavit must be denied.

**B. Hearsay Challenge**

The Department next moves to strike ¶ ¶ 4, 7, 9, 11, 12, 18, 21, 24, 25, 28, 29, 30, 34, 39, 42, 43, 45, 48, 49, 51, 53, 54, 55, 61, 64, of the Marceau Affidavit. The Department claims each of these paragraphs contain hearsay and therefore must be stricken. Marceau contends however, that the challenged statements are admissions by a party-opponent and may be properly considered.

Hearsay is a "statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Federal Rule of Evidence 801(d)(2)(D) provides, however, that "[a] statement is not hearsay if [t]he statement is offered against a party and is a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Plaintiffs argue that "[t]he statements which Defendants ask the Court to strike fall within" this exception. To fall within the scope of Rule 801(d)(2)(D) however, Marceau must first show that the challenged statement was made by an "agent or servant" of the Department. Second, she "[must] lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment." *Sims v. Lakeside School*, 2007 WL

4219347(W.D. Wash. Nov. 28, 2007 ) (quoting *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir 1986). Third, the statement must be "concerning a matter within the scope of the agency or employment."

First, to qualify as an admission by a party-opponent, the challenged statements must have been made by an "agent or servant" of the Department. The Department concedes that Barton-Wagner, Teresa Jones, Don Roberson, Long, and Bob Pridgen, as employees or former employees of the Department, are "agents or servants" as contemplated by Rule 801(d)(2)(D). The Department asserts instead that "the record fails to establish that the alleged statements by Becky Barton-Wagner, Teresa Jones, Don Robertson, Long, and Bob Pridgen occurred within the scope of the declarants' employment or that they were authorized to make such statements on behalf of the [Department]." However, the proponent of evidence is not required to lay a foundation establishing that the "agent or servant" had authority to make the statements. Instead, the rule requires only that "the proffering party[] lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment." *Sims v. Lakeside School*, WL 4219347 (Nov. 28, 2007, W.D. Wash.) (quoting *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir 1986). "When a court is evaluating whether such a foundation has been established, 'the contents of the statement shall be considered but are not alone sufficient to establish...the agency or employment relationship and scope thereof." *Sea-Land Service, Inc. v. Lorzen Intern.*, LLC, 285 F.3d 808, 821 (9th Cir.

2002) (quoting Fed. R. Evid. 801(d)(2)). This Court finds that Marceau has not laid the

required foundation for the challenged statements in ¶ ¶ 18, 43, 64 and so may properly

strike them. However, Marceau has laid the required foundation for the statements made

in ¶ ¶ 28, 29, 30, and 54. As a result, this Court may consider the statements contained in

those paragraphs. The statement in ¶ 25 is not hearsay and therefore may be properly

considered.

The Department next claims that because Donovan, Birch, Benjamin, Webber, and

Brack were not "employees" of the Department, Rule 801(d)(2)(D) does not apply to the

statements made by them in ¶ ¶ 7, 9, 12, 21, 24, 34, 39, 45  48, 51, and 53. However, Rule

801(d)(2)(D) is clear that the exception applies to both an "agent" and "servant" of the

Department, not just "employees." While the Federal Rules of Evidence do not

specifically define "agent" and "servant" for the purposes of 801(d)(2)(D), "we believe

that Congress intended Rule 801(d)(2)(D) 'to describe the traditional master-servant

relationship as understood by common law agency doctrine." *Lippay v. Christos*, 996 F.2d

1490 (3rd Cir. 1993) (quoting *Boren v. Sable*, 887 F.2d 1032, 1038 (10th Cir. 1989)).

Under this common law agency doctrine, "[a]n agent is one who 'acts on the principal's

behalf and subject to the principal's control.' To form an agency relationship, both the

principal and the agent must manifest assent to the principal's right to control the agent."

*US v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (citing Restatement (Third) Agency

§ 1.01). While these persons may be "agents" or "servants" of the Department, Marceau

has made no showing in the record as to whether any of these individuals are "agents" or servants of the Department. As a result, the challenged statements must be stricken to the extent that they constitute hearsay. This Court finds that the statements contained in ¶¶ 7, 12, 21, 24, 34, 39, 48, and 53 are not hearsay because Marceau was merely testifying to the fact that certain statements were made by others rather than to the facts contained within those statements. However, ¶¶ 9, 45, and 51 do constitute hearsay and therefore must be stricken.

Finally, this Court finds that the statements allegedly made to Marceau by unidentified women in ¶¶ 4, 11, 42, 55, and 61 do not fall within the scope of Rule 801(d)(2)(D), as Marceau has made no showing that the women were "agents or servants" of the Department. However, ¶¶ 4 and 11 are not hearsay and so may be considered by this Court. However, ¶¶ 42, 55 and the first line of ¶ 61 do constitute hearsay and must be stricken.

## C. Best Evidence Rule Challenge

The Department next moves to strike ¶¶ 13, 31, 38, 43, 56, 57, 61, and 62 of the Marceau Affidavit on the ground that these paragraphs contain statements about the content of emails which Marceau has failed to introduce into evidence. Generally, "[t]o prove the content of a writing...the original writing....is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. The requirement that the original writing must be produced in order to prove the content of the writing is

frequently referred to as the "best evidence rule." "The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." *United States v. Ross*, 33 F.3d 1507, 1513 (11th Cir. 1994). "The rule's application turns on 'whether contents [of the document] are sought to be proved' *Id.* or instead whether the testimony merely "states a fact about [the] writing" such as whether the document exists, "its type, history, execution or delivery." 2 McCormick on Evidence § 234 (6th ed.) (internal citations omitted). If testimony attempts to prove the contents of the document, such testimony is not admissible unless the original document is provided or an indication the original is lost. Conversely, where the testimony merely states a fact about the writing, then the challenged testimony is admissible. "Where the rule applies, the proponent must produce the original (or a duplicate, see Fed.R.Evid. 1003) or explain its absence." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004).

It is uncontested that Marceau has not produced the emails referenced in her affidavit. Nor does Marceau produce an acceptable duplicate pursuant to Fed. R. Evid.1003 or "explain [the email's] absence." Instead, Marceau argues that "[n]owhere does the testimony purport to rely on the contents of the email" and so it may not be properly stricken. Thus, whether the challenged statements must be stricken pursuant to Fed.Rule.Evid. 1002 turns on whether the challenged testimony attempted to "prove the contents of" the referenced emails or whether it merely "states a fact about" the emails. To answer this question, each of the challenged statements must be analyzed in turn.

In sentence 1 of paragraph 13, Marceau indicates that she "sent [Deal] an email summarizing the blind date issue." This statement directly implicates the substance of the email and so Marceau's testimony is offered "[t]o prove the content of [the] writing." Thus, this sentence must be stricken. However, sentences 2 and 3 do not attempt to prove the content of the email. Instead, these sentences recount a conversation between Marceau and Deal and action taken by Marceau subsequent to that conversation. Therefore, only sentence 1 of ¶ 13 must be stricken.

In sentence 2 of paragraph 43, Marceau testified as to the substance of an attachment to the email itself from "one of [Roberson's] employees." This sentence indicates that the email itself contained a "written statement from one of Roberson's employees stating that the employee had witnessed Barton-Wagner enter the investigation's [sic] office and go through Mr. Roberson's filing cabinets." Given that Marceau provides testimony about the substance of the email in this sentence, it must be stricken pursuant to Rule 1002. However, sentences 1 and 3 are not offered to prove the contents of the email, but instead merely indicate Marceau's receipt of an email and her understanding of a Roberson's office as a restricted area. Thus, sentences 1 and 3 need not be stricken.

In paragraph 38, Marceau indicates she "sent an email to the IT service desk *regarding* my missing outlook folders." While the statement does include a statement of fact *about* the email, specifically that Marceau sent an email to the IT service desk at 6:52

a.m., it also clearly makes testimonial representations about the content of the email. Specifically, that the e-mail contained information regarding Marceau's "missing outlook folders. As a result, paragraph 38 must be stricken.

Next, the Department claims sentence 6 of ¶ 46 must be stricken pursuant to Rule 1002. However, nothing in sentence 6 of ¶ 46 attempts to prove the content of an email. Rather, sentence 6 merely attempts to prove that Marceau, in a conversation with Deal, represented to Deal that she had sent him an email "regarding the employee's personal email incident." Given that the content of a conversation, even a conversation about an email, does not fall within the scope of Rule 1002, the challenged sentence need not be stricken.

All of ¶ 56 must be stricken, as the single sentence within the paragraph discusses the content of an email sent by Deal to Marceau.

While the Department asks this Court to strike all of paragraph 57, only the second sentence attempts to "prove the contents" of the email. The first sentence merely indicates that the email was sent and that in doing so Marceau had attempted to be comprehensive. Nowhere in the first sentence does Marceau make any representation about the substantive content of the email. Further, the third sentence merely recounts a conversation between Marceau and Deal. Given that only the second sentence attempts to prove the contents of an email sent by Deal, only it will be stricken from the affidavit.

The Court finds the second, third, fourth, and sixth sentences of ¶ 61 must be stricken. The remainder of the sentences of this paragraph do not attempt to prove the content of the email in question. Rather, they recount conversations between Marceau and "an employee" as well as Marceau's own opinion about an event which had occurred outside of a document which was not submitted.

Only the last sentence of ¶ 62 must be stricken as a statement which sought to "prove the content of" an email. The rest of ¶ 62 merely indicates that Marceau sent an email to Priest and then recounts a subsequent conversation between Marceau and Priest.

Further, pursuant to Rule 1002, ¶ 56 must be stricken in its entirety. Finally, the above noted portions of paragraphs 13, 31, 38, 43, 56, 57, 61, and 62 are also violative of Rule 1002 and therefore must be stricken. However, this Court finds that no part of ¶ 46 must be stricken because nothing within that paragraph "attempts to prove the contents of" any email.

### D. Exhibits C, D, E, F

The Department next challenges the admissibility of Exhibits C, D, E, and F. The Department claims that each of these Exhibits "contain hearsay, about which Marceau has no personal knowledge, and about which Marceau has failed to lay proper foundation." (Dkt. No. 26.) Marceau has failed to respond to the substance of the Department's evidentiary challenges. Instead, she argues that such defects cannot justifying striking the challenged portions of the exhibits because they are "clearly [] business record[s]" and

also "fall under the hearsay exception Fed. R. Evid. 801(d)(2)(D)." As a result, whether this Court will strike the challenged portions of the exhibits turns on whether each exhibit is either a qualifying business record or falls under the admission by a party-opponent exception to the general prohibition against the admission of hearsay.

## I. Business Records Exception

The Department first challenges certain portions of the aforementioned exhibits because they contain statements "about which Marceau has no personal knowledge." Specifically, the Department has moved to strike ¶ ¶ 9, 10, and 11 of Exhibit E, all of Exhibit C, and certain unspecified portions of Exhibit D on this basis. (Dkt. No. 26.) It is true that, generally, a witness must have personal knowledge of the information to which they are testifying. Fed. R. Evid. 602. However, courts in the Ninth Circuit have determined that "[p]ersonal knowledge...is not strictly limited to activities in which the declarant has personally participated." *E.g.*, *Washington Cent. R.R. Co., Inc. v. National Mediation Bd.*, 830 F.Supp. 1343, 1352-53 (E.D.Wash. 1993). Instead, "[p]ersonal knowledge can come from the review of the contents of business records, and an affiant may testify to acts that she did not personally observe but which have been described in business records."*AT&T Corp. v. Overdrive, Inc.* 2006 WL 3392746 (N.D. Ohio Nov. 21, 2006); *See also*, *Laurant Beverly Hills v. Ford Motor Co.*, 108 F.3d 338 *3 (9th Cir. 1996); *New Hampshire Ins. Co. v. Blaze Const. Inc.*, 28 F.3d 107 *2 (9th Cir. 1994). In order to claim the benefit of the exception provided in Fed. R. Evid. 803(6), "for a

memorandum or record to be admissible as a business record, it must be "(1) made by a regularly conducted business activity, (2) kept in the 'regular course' of that business, (3) 'the regular practice of that business to make the memorandum,' (4) and made by a person with knowledge or from information transmitted by a person with knowledge." *Paddock v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984).

This Court finds that Marceau has failed, for purposes of the Motion for Summary Judgment, to establish that the challenged Exhibits are business records as defined under Fed. R. Evid. 803(6). To obtain the benefit of the business records exception, it is not enough for Marceau to simply say that the submitted exhibit "is clearly a business record." (Dkt. No. 27.) By simply characterizing an Exhibit as "clearly a business record," Marceau has simply made no showing with respect to any of four requirements listed above.

### ii. Admission By A Party-Opponent

The Department next challenges a number of other portions of Exhibits C, D, and E because they contain hearsay and speculation. Marceau claims these Exhibits fall under the exception articulated in Fed. R. Evid. 801(d)(2)(D), admission by a party opponent. As noted above, to claim the benefit of the Rule 801(d)(2)(D) exception, a plaintiff must first demonstrate that the statement was made by an "agent or servant" of the Department. Second, Plaintiff must "lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment." *Sims v. Lakeside School*,

2007 WL 4219347 (W.D. Wash. Nov. 28, 2007) (quoting *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir 1986). "When a court is evaluating whether such a foundation has been established, 'the contents of the statement shall be considered but are not alone sufficient to establish...the agency or employment relationship and scope thereof." *Sea-Land Service, Inc. v. Lorzen Intern., LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (quoting Fed. R. Evid. 801(d)(2)). Marceau has provided no facts which support either prong of the exception to Rule 801(d)(2)(D).

This Court finds that Exhibit C is admissible under Rule 801(d)(2)(D). Marceau has demonstrated that Priest, the Deputy Director of the Department, is an "agent or servant" of the Department. Further, Marceau adequately established a foundation for the email. Exhibits D and E, however, cannot be admissions by a party-opponent, as they are documents which contain statements from Marceau herself. This Court further finds that the statements by Marceau in Exhibits D and E do not constitute hearsay, as Marceau was merely testifying to the fact of statements made by others, rather than to the factual content of the statements themselves.

**E. Exhibits H and I**

Finally, the Department moves to strike the hand-written notes contained in Exhibits E, H, and I. This Court agrees that Marceau has failed to lay a proper foundation for the introduction of these notes. Nowhere has Marceau identified the author of the

notes or how they are relevant to this Court's decision on the Motion for Summary

Judgment. As a result, this Court will strike the hand-written notes in Exhibits E, H, and I.

## II. MOTION FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of

Civil Procedure, which provides, in pertinent part, that judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). Under Rule 56 summary judgment is mandated if the non-moving party fails to

make a showing sufficient to establish the existence of an element which is essential to

the non-moving party's case and upon which the non-moving party will bear the burden

of proof at trial. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving

party fails to make such a showing on any essential element, "there can be no 'genuine

issue of material fact,' since a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of

summary judgment, must be both "material" and "genuine." An issue is "material" if it

affects the outcome of the litigation. An issue, before it may be considered "genuine,"

must be established by "sufficient evidence supporting the claimed factual dispute . . . to

require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (*quoting First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989). When applying this standard, the court must view all of the evidence in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

Courts in the Ninth Circuit have "set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). Specifically, "[e]stablishing a prima facie Title VII case in response to a motion for summary judgment requires only 'minimal' proof and 'does not even need to rise to the level of a preponderance of the evidence.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). "'We require very little evidence to survive summary judgment' in a discrimination case, 'because the ultimate question is one that can only be resolved through a 'searching inquiry'- one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. University of Hawaii*, 40 F.3d 1551, 1563 (9th Cir. 1994). Formulated another way, "summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.'" *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985).

**B. COBRA CLAIM- Count 3**

The first of Marceau's remaining claims ("COBRA claim") is that the Department "has failed and continues to fail on a daily basis to notify [Marceau] pursuant to 29 U.S.C. § 1166, of her rights to receive COBRA benefits." (Dkt. No. 13.) The portion of the notification statute upon which this claim is based provides that "[t]he employer of an employee under a plan must notify the administrator of a qualifying event... within 30 days...of the qualifying event." 29 U.S.C. § 1166(a)(2). After receiving such notification, "the administrator shall notify...in the case of a qualifying event... any qualified beneficiary with respect to such event...of such beneficiary's rights under this subsection." 29 U.S.C. § 1166(a)(4)(A). Plaintiff can only avoid the entry of summary judgment for the Department if she can demonstrate, first, that the Department had a duty under 29 U.S.C. § 1166(a)(4)(A) to notify of her of her right to continue coverage, and second, that the Department failed to satisfy that duty.

**I. The Department Had No Duty to Provide Notification to Marceau**

The viability of Marceau's COBRA claim is dependent on her assumption that 29 U.S.C. § 1166 requires the Department to timely notify her "of her rights to receive COBRA benefits." While it is true that notification of such rights must be provided to a "qualified beneficiary" upon the occurrence of a "qualifying event," the clear text of the statute provides that it is not the obligation of an employer to do so. Instead, the sole statutory obligation of the employer with respect to notification is to "notify *the*

*administrator* of a qualifying event...within 30 days...of the qualifying event." 29 U.S.C.

§ 1166(a)(2) (emphasis added). Nothing in the statute suggests that it is the employer's

responsibility, if the employer is not the administrator of the group health plan, to notify

the employee directly of her rights under COBRA. As a result, "so long as the employer

meets the requirement of notifying the plan administrator of a qualifying event, it would

not be responsible to a COBRA beneficiary for the administrator's subsequent failure to

deliver an effective notice to the beneficiary." (27 Am. Jur. 2d Employment Relationship

§ 160 "Employer's Notice Requirements") (citing *Bruno v. United Steelworkers of*

*America*, 983 F.2d 1065 (6th Cir. 1993)).

In this case, it is undisputed that the Department is not the administrator of the

group health plan of which Marceau was a member. Rather, "Blue Cross is the

administrator of the State of Idaho Group Health Plan." (Dkt. No. 19 Ex. 4.) Further, the

record demonstrates, and Marceau has not contested, that the employer complied with its

obligation to provide notice of the qualifying event, Marceau's termination, to the plan

administrator. As a consequence of the Department's full compliance with its notice

obligation under 29 U.S.C. § 1166(a)(2), this Court cannot hold the Department liable for

the alleged failure of Blue Cross to comply with its own independent statutory duty of

notification under 29 U.S.C. § 1166(a)(4)(A).

Since Blue Cross is not a named defendant, the Court need not address Marceau's argument that she did not receive the required notice. Instead, the notice claim against the Department must be dismissed as a matter of law.

### C. Retaliation Claim- Count 5

Plaintiff next claims that the Department violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. "by retaliating against her after complaining about discriminatory conduct and following her filing of a charge of discrimination." (Dkt. No. 13.) As a general rule, "[a]n employer cannot retaliate against an employee for 'opposing any practice made an unlawful employment practice by this subchapter.'" *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). Marceau claims the Department retaliated against her for her role in pursuing the Wilkerson sexual harassment investigation in at least four ways.

First, Marceau claims "that Barton-Wagner's [computer] surveillance was in retaliation for [her] role in the Wilkerson sexual harassment investigation." (Dkt. No. 13.) Second, she argues that the Department "stripped [her] of her remaining day-to-day responsibilities" for "going outside the chain of command" to investigate sexual harassment complaints. *Id.* Third, Marceau suggests "Brack and Benjamin were trying to freeze me out by intimidating my coworkers and telling them not to have any contact with me. I was told they were trying to find a reason to fire me." *Id.* Finally, Marceau claimed that she was "being set up to be terminated. It is apparent to me that [the Department]

[was] fabricating evidence to justify my termination." *Id.* While each of these alleged

retaliatory acts could be construed to constitute a separate basis for independent

retaliation claims, Marceau has not framed her retaliation claim in this way. Further, each

of these acts were allegedly done for the purpose of ultimately justifying or facilitating

Marceau's termination.

Whether Marceau has alleged claims and evidence of retaliation sufficient to avoid

entry of summary judgment turns on this Court's application of the *McDonnell* "shifting

burdens" test. Federal courts employ a "system of shifting burdens in Title VII

discrimination and retaliation cases. " *Bergene v. Salt River Project Agr. Imp. and Power

Dist.*, 272 F.3d 1136, 1140 (9th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802-03 (1973). The plaintiff bears the initial burden of establishing a prima

face of retaliation. "In order to make out a prima facie case of retaliation, a plaintiff must

show that (1) she was engaging in protected activity, (2) the employer subjected her to an

adverse employment decision, and (3) there was a causal link between the protected

activity and the employer's action. *Bergene v. Salt River Project Agr. Imp. And Power

Dist.*, 272 F.3d 1136, 1140-41 (9th Cir. 2001) (citing *Folkerson v. Circus Circus Enters.,

Inc.*, 107 F.3d 754, 755 (9th Cir.1997)). Upon making this showing, the burden shifts to

the defendant to produce evidence that the plaintiff was subject to the adverse

employment action for a legitimate, nondiscriminatory reason. *Id.* (citing *Texas Dep't of

Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)); *see also* Civil Rights Act of

1964, § 701 *et seq.*, as amended, 42 U.S.C.A. § 2000e *et seq.*. The burden then shifts back to the plaintiff to show the proffered reason was a pretext for discrimination. *Id.* (citation omitted).

### I. Prima Facie Case

To establish a prima facie case of retaliation under Title VII, Marceau must first show that "she was engaging in a protected activity." *Bergene*, 272 F.3d at 1140-41. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), provides that "opposing any practice made an unlawful employment practice by this subchapter" is a "protected activity." *See also*, *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)) ("An employer cannot retaliate against an employee for 'opposing any practice made an unlawful employment practice by this subchapter.'") To obtain the benefit of "opposition clause" protection, Plaintiff "must only show that she had a 'reasonable belief' that the employment practice [she] protested was prohibited under Title VII,' and [she] does not need to demonstrate that the employment practice was in fact illegal." *Parker v. Otis Elevator Co.*, 9 Fed.Appx. 615, 617 (9th Cir. 2001). Importantly, "an employee's complaints about the treatment of others is considered a protected activity, even if the employee is not a member of the class that he claims suffered from discrimination, and even if the discrimination he complained about was not legally cognizable." *Ray v. Henderson*, 217 F.3d 1234, 1240, n. 3 (9th Cir.2000).

The Ninth Circuit has determined that "[s]exual harassment, if committed or tolerated by the employer, becomes a new and onerous term of employment" and so is an "unlawful employment practice" as contemplated by the opposition clause. *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000). Construing the evidence in a light most favorable to the non-movant, this Court finds there is a genuine and material issue of fact as whether Plaintiff "reasonably believed" the Department tolerated sexual harassment. Specifically, Marceau testified that "Mr. Priest was refusing to allow me to investigate a sexual harassment claim within the Department" (Dkt. No. 22.). She also indicated that she believed that "Deal, Priest, and Donovan [were] trying to cover for Wilkerson['s]" sexually harassing behavior by "continually ignoring" complaints of harassment as well as Marceau's "request that the complaints be investigated." (Dkt. No. 13.) As a result of her reasonable belief that the Department tolerated sexual harassment, this Court finds that Marceau's complaint and investigation were protected activities under the "opposition clause" provided for in 42 U.S.C. § 2000e-3(a).Thus, for purposes of the Motion for Summary Judgment, the Court finds the first prong of the prima facie test articulated in *Bergene* is satisfied.

The second prong requires a plaintiff to show that "the employer subjected her to an adverse employment action." The Ninth Circuit has defined an "adverse employment action [as] adverse treatment that is reasonably likely to deter employees from engaging in protected activity." *Summar v. Potter*, 355 F.Supp.2d 1046, 1058 (D. Alaska 2005)

(quoting *Ray v. Henderson*, 217 F.3d 1144, 1237 (9th Cir.2000). Here, Marceau alleges four distinct adverse employment actions leading up to her termination, each of which would independently "deter reasonable employees from engaging in protected activity." First, Marceau alleges that the Department "stripped [her] of her remaining day-to-day responsibilities" for "going outside the chain of command" to investigate sexual harassment complaints (Dkt. No. 13.). This allegation, if true, would alone satisfy the second prong, as "a modification of plaintiff's job duties by removing tasks [is] an adverse employment action." *Montgomery v. City of Portland Fired & Rescue*, Slip Copy, 2009 WL 1329850 (D. Or. May 8, 2009) (citing *Granville v. City of Portland*, 2005 WL 1113841, at * 7 (D. Or. May 10, 2005)). Second, targeted surveillance of an employee might reasonably deter that employee from engaging in protected activity, especially when the employee believes, as Marceau did, that the surveillance is being conducted specifically for the purpose of "justifying [the employee's] termination." Third, Marceau's claim that "Brack and Benjamin were trying to freeze me out by intimidating my coworkers and telling them not to have any contact with me" (Dkt. No. 13.) is an adverse employment action. "Mere ostracism in the workplace is not grounds for a retaliation claim." *Manatt v. Bank of America*, 339 F.3d 792, 803 (9th Cir. 2003). However, "an adverse employment action might be established [if the employer] specifically encourage[s]" the ostracism. *Bergin v. North Clackamas School Dist.*, 2005 WL 66069 (D. Or. January 12, 2005). Here, this Court finds that there is a genuine and material issue

of fact as to whether the Department actively encouraged other employees to "not have any contact with" Marceau in retaliation for her investigation of sexual harassment claims. Finally, Marceau's termination from her employment because of her investigation and complaint of various incidents of alleged harassment is an adverse employment action. Given each of these facts, Marceau has satisfied the requirement of the second prong that she was subject to an "adverse employment action."

Finally, to establish a prima facie case, Marceau must show "a causal link between the protected activity and the employer's action." As noted above, when applying this prong of the test for retaliation, this Court need only require "minimal" evidence of a causal link because "summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.'" Here, Marceau testified that managers within the Department resisted her investigation into potential sexual harassment by instructing her not to speak with the complaining employees. (Dkt. No. 22 ¶ 8) ("When I met with Mr. Priest and disclosed the findings of my investigation regarding the blind date issue, he became extremely angry with me...[and] ordered me not to speak to" the individual who allegedly was subjected to sexual harassment.) Further, Marceau testified that Long "stated that, based on the questions Ms. Brack asked, Ms. Long was convinced they were trying to find a reason to fire me." (Dkt. No. 22 ¶ 54.) Accepting these statements as true, this Court finds that there is sufficient "minimal"

evidence that Marceau's ultimate termination was in reaction to the legally protected activity of investigating and reporting a potential violation of Title VII.

### ii. Legitimate Reason

"Under the burden-shifting scheme of Title VII...after the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). The Department argues Marceau was terminated because of her disclosure of confidential Department information, for falsely accusing a coworker of improperly accessing her computer, and for going "outside the agency" to complain about the alleged surveillance of her computer. (Dkt. No. 19.) The Court finds all three reasons are legitimate reasons for the termination of an at-will employee such as Marceau. As a consequence, the burden shifts back to Marceau to show pretext with respect to the proffered reasons for her termination.

### iii. Pretext

Plaintiff may demonstrate pretext in one of two ways. "Pretext may be shown either (1) directly by persuading the jury that a discriminatory motive more likely than not motivated the employer or (2) indirectly by showing that the employer's proffered explanation is unworthy of credence." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). At the summary judgment level,

these two methods of demonstrating pretext are judged by distinct evidentiary standards. However, under either method, "'[w]hen the evidence, direct or circumstantial, consists of more than the *McDonnell Douglas* presumption, a factual question will almost always exist with respect to any claim of a nondiscriminatory reason." *McGinest*, 360 F.3d at 1124 (quoting *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

Generally, "[w]hen the plaintiff offers *direct evidence* of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (emphasis added). Instead, where direct evidence is offered, the plaintiff is only required to produce "very little" evidence of discriminatory motive. *Id.* "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus *without inference or presumption*." *Id.* (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)) (emphasis added). Here, Marceau does not attempt to argue that any of the evidence offered is "direct evidence." (Dkt. No. 21.) Instead, she argues only that "discriminatory *inferences* can be drawn from the facts." *Id.* (emphasis added). Indeed, the only evidence that could conceivably be considered "direct evidence" of a discriminatory motive is Marceau's representation that "Long also stated that...[she] was convinced they were trying to find a reason to fire me." *Id.* However, the statement by Long that she was "convinced they were trying to find a reason to fire" Marceau does not

"prove the fact of discriminatory animus" without requiring this court to infer or presume that the Department was motivated to terminate Marceau's employment *because of* her investigation and reporting of a potential sexual harassment claim. Given that none of the facts offered by Marceau may be considered "direct evidence," this Court may only find pretext "indirectly by [finding] that the employer's proffered explanation is unworthy of credence."

Where a plaintiff fails to provide direct evidence of discriminatory motive, they "may come forward with circumstantial evidence that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998). In contrast to the low evidentiary threshold for avoiding summary judgment by providing direct evidence, "[t]o show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives." *Id.* This Court finds that Marceau has alleged the required "specific and substantial evidence" to avoid entry of summary judgment. First, Marceau has provided the testimony from Long indicating that Marceau never disclosed confidential information to her in violation of company policy. Further, Marceau testified that Long had told her that the Department was "looking for a reason to fire" her, a fact which, if substantiated, would significantly undermine the Department's claim that Marceau was fired for the proffered reason of disclosing confidential information. Further, there is also

a genuine and material issue of fact as to whether Marceau's computer was improperly accessed and whether she improperly went "outside the agency" to investigate her claim.

While the Court does not feel the pretext evidence submitted by Plaintiff is overwhelming or determinative, a reasonable juror could find that Plaintiff has provided sufficient evidence of pretext on the part of Defendants. Therefore, the evidence of pretext is sufficient evidence to prevent summary judgment from being granted. The Court must deny Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim in Count 5, as genuine issues of material facts exist regarding the alleged pretext of the reasons given for Marceau's termination.

### D. Hostile Work Environment - Count 5

Plaintiff next contends as part of Count 5 that the Department violated 42 U.S.C. §§ 2000e et seq. by failing "to investigate complaints of gender hostility, bias and otherwise discriminatory behavior" and by "permitting and condoning a sexually hostile work environment." (Dkt. No. 13.) Broadly, "[a] hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed." *Brooks,* 229 F.3d at 923. Whether Marceau can avoid entry of summary judgment on this claim turns on whether she can satisfy the three prongs of a prima facie case articulated in *Fuller* v. *City of Oakland.* 47 F.3d 1522, 1527 (9th Cir.1995))

### I. Prima Facie Case

"To make a prima facie case of a hostile work environment, a person must show 'that: (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Craig v. M&O Agencies Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (citing *Fuller,* 47 F.3d at 1527). Further, "[t]o prevail on a hostile work environment sexual harassment claim, the plaintiff must show that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so." *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005). "[T]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' " *Brooks*, 229 F.3d 917, 927 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

As noted earlier, "[e]stablishing a prima facie Title VII case in response to a motion for summary judgment requires only 'minimal' proof and 'does not even need to rise to the level of a preponderance of the evidence.'" *Id.* When evaluating whether Marceau has provided the requisite "minimal" proof, "[w]e use a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment." *Brooks,* 229 F.3d at 923.

The first prong of the prima facie case requires Marceau to "show that she was subjected to verbal or physical conduct of a sexual nature." *Craig*, 496 F.3d at 1055. To satisfy this prong, Marceau points to several incidents where she was subjected to a "verbal or physical conduct of a sexual nature" by Wilkerson. For example, Marceau testified that, "[o]n or about April 22, 2009, Mr. Wilkerson stopped in front of my office door and luridly stuck out his tongue at me and moved it in a sexual manner." (Dkt. No. 22.) Marceau also testified that she "had several encounters with Wilkerson" in which she "caught him leering at me in a sexual manner." Marceau also alleged that "[d]espite complaining of Wilkerson's harassment, Wilkerson, beginning in early February, 2009, focused his unwanted attention on me by giving me gifts and making sexist comments." (Dkt. No. 13.) Each of these incidents are "verbal or physical conduct of a sexual nature" and so Marceau has satisfied the first prong of the *Fuller* test.

The second prong requires Marceau to show that the "verbal or physical conduct...was unwelcome." *Craig,* 496 F.3d at 1055. Marceau testified that, immediately after Wilkerson "luridly stuck out his tongue at [her] and moved it in a sexual manner" she told Wilkerson "his behavior was disgusting and to never do it again." She then "immediately reported the incident to Mr. Deal." (Dkt. No. 22.) At another point, after she observed "Mr. Wilkerson ogling at the buttocks of women, staring at their breasts....and sneaking out of my office after leaving a box of chocolates" she again

"complained to Mr. Deal." (Dkt. No. 22.) Given these complaints, Marceau has satisfied the requirement that she show the verbal or physical conduct to be unwelcome.

Finally, the third prong requires that the plaintiff show "the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Craig*, 496 F.3d at 1055. Marceau argues that the Department's tolerance of or complicity in Wilkerson's alleged sexual harassment satisfies this prong. Generally, "Title VII is limited to employment discrimination, and therefore sexual harassment is actionable under the statute only when it affects the plaintiff's conditions of employment." *Doe v. Oberweis Dairy*, 456 F.3d 704, 715 (7th Cir. 2006) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).

In determining whether the alleged sexual harassment altered the terms and conditions of Marceau's employment, "[w]e weigh both severity and pervasiveness to evaluate whether a reasonable victim would think that sexual harassment had become a permanent feature of the employment relationship." *Id.* " 'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.*

To support her hostile work environment claim, Marceau points to the fact that Wilkerson left a box of chocolates in her office, stuck his tongue at her in a sexually

suggestive manner, and stared at her. While some of Wilkerson's conduct might be objectionable, this Court finds his actions were not sufficiently severe and pervasive to allow a reasonable woman to believe the harassment had changed "the terms and conditions" of her employment for two reasons.

First, "[b]ecause a 'sexual harassment case' is against the employer, not the harasser, and 'only the employer can change the terms and conditions of employment, an isolated incident of harassment by a coworker will rarely (if ever) give rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship.'" *E.E.O.C. v. Prospect Airport Services, Inc.*, 621 F.3d 991, 999 (9th Cir. 2010). The fact that the conduct complained of by Marceau was committed by a co-worker thus weighs heavily against finding an actionable hostile work environment claim.

Second, the conduct complained of was not "extreme" or "severe." For example, Marceau's claim that Wilkerson made romantic advances toward her by leaving chocolates at her office does not support the existence of a hostile work environment. *Laying v. Twin Harbors Group Home Ass'n.*, 2006 WL 197127 (W.D. Wash. January 24, 2006) ("The pursuit of a date with Plaintiff, along with the related outpourings of flowers, cards, and telephone calls do not rise to the level of "severe" or "pervasive" sexual harassment.") Further, courts in the Ninth Circuit have determined that when a coworker "stuck out his tongue and wiggled it around at" a plaintiff, such conduct, even when

combined with derogatory name calling, does not rise to the level of severe or pervasive conduct and so cannot sustain a hostile work environment claim. *Lappin v. Laidlaw Transit Inc.*, 179 F.Supp.2d 1111, 1120-21 (N.D. Cal. 2001). Finally, simply staring at an individual on occasion, even when combined with the above acts, cannot lead this Court to find that the conduct complained of was, as a matter of law, so extreme, severe, and pervasive as to permanently alter the terms and conditions of Marceau's employment. Therefore, even viewing Plaintiff's specific facts in a light most favorable to her, the conditions complained of do not rise to the level of having changed the terms and conditions of her employment.

Given this Court's finding that Marceau has failed to establish the third prong of the prima facie case for a hostile work environment, it must grant Defendant's Motion for Summary Judgment with respect to that claim.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (Dkt. No. 19.) is GRANTED with respect to Claims 1, 2, 3, 4, and 6. However, the motion is DENIED with respect to the retaliation claim in Claim 5, although summary judgment for a claim of hostile work environment under Claim 5 is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (Dkt. No. 26.) is GRANTED in part and DENIED in part consistent with this Order.

The docket in this matter does not establish the parties have attempted to conduct a settlement conference with a magistrate judge as directed by the Court in its Scheduling Order (Dkt. No. 8) and as directed by the Docket Text Notice (Dkt. No. 17.) that the parties were to contact Judge Bush's courtroom deputy to arrange a settlement conference on or before November 8, 2010. (Dkt. No. 17.)  Because the claims have been narrowed to the retaliation claim, the Court it would be beneficial for the parties to attempt to resolve this matter prior to trial.  IT IS FURTHER ORDERED that the parties shall contact Judge Bush's courtroom deputy immediately to schedule a settlement conference on the remaining claim.

The Stipulation to Vacate Trial (Dkt. No. 29) filed on August 3, 2011, is DENIED by the Court. Trial in this matter remains set for September 27, 2011.

DATED:  **August 5, 2011**

Honorable Edward J. Lodge
U. S. District Judge